Robert M. Seines
Attorney at Law
1312 N. Monroe St.
Spokane, WA 99201
509-844-3723
rob@rseines.com

Attorney for Defendant

# UNITED STATES DISTRICY COURT
# FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>SHAWN DRUMMOND,<br><br>　　　　　　　　Defendant. | NO: 23-CR-0020-MKD<br><br>DEFENDANT'S SENTENCING MEMORANDUM AND MOTIONS FOR VARIANCE OR DEPARTURE |

　　　　Shawn Drummond by and through his attorney, Robert M. Seines, respectfully submits the following sentencing memorandum and motions for departure or variance.

　　**1.　　BACKGROUND.**

　　　　This case is about extraordinary rehabilitation, redemption and an emerging community leader. For many years, Shawn Drummond was a desperate heroin – and then fentanyl addict. In 2016 he was charged and convicted in State court for possession of a controlled substance and bail jumping. He received a residential

DEFENDANT'S SENTENCING MEMORANDUM
AND MOTIONS FOR VARIANCE OR DEPARTURE

Page 1 of 15

Drug Offender Sentencing Alternative (DOSA) sentence. This entailed substance abuse evaluation and treatment followed by two years community supervision. He began and successfully completed the program in 2017.[1]

Shawn was clean and sober from 2017 until 2021. The end date was during Covid. There were no in-person NA meetings at the time and Shawn was losing contact with his support. Around that time Shawn's younger brother, Joel, died after suffering with liver disease. Joel went into the hospital on December 3, 2020 and he passed a month later. Shawn's parents' and his grief was made worse because Covid restrictions only allowed Zoom meetings with Joel in his hospital bed.

Shawn's parents were a wreck and he tried to step in and be their support. He organized and paid for a funeral and Joel's burial. He was holding on until Joel's birthday - eight months later. Shawn says that "the reality and lividity of my grief and my loss really impacted me." He was weighed down with depression and the sudden relapse of grief. He was also disconnected from his recovery community and felt he had nowhere to go for real support. Then – he saw someone

---

[1] See Draft PSIR, ECF 76 at ¶¶ 84 and 127.

DEFENDANT'S SENTENCING MEMORANDUM
AND MOTIONS FOR VARIANCE OR DEPARTURE

Page 2 of 15

on the street who he used to do drugs with. He asked her to give him some heroin. She told him that heroin had not been around for a long time, and she gave him fentanyl instead. This began his fall back into deep addiction and led him to be a fentanyl dealer.[2]

## 2. FACTS OF THE OFFENSE

The United States and Defendant have stipulated that the following facts set forth below are accurate.

Beginning in July 2022, detectives with the Columbia River Drug Task Force began receiving information that Defendant was a fentanyl distributor in the Wenatchee, Washington area. One source indicated that Defendant only dealt in "boats," *i.e.*, 1,000 fentanyl pills; a second source indicated that Defendant stored fentanyl pills on his property locked up outside his garage.

A search warrant was executed on Defendant's residence in Wenatchee on December 9, 2022. A mailbox was found buried in the snow and surrounded by tires outside Defendant's garage. The mailbox was found to contain a duffle bag that contained eight baggies which each held approximately 1,000 blue pills. Pills

---

[2] See Draft PSIR ECF 76 at pages 6 to 8.

DEFENDANT'S SENTENCING MEMORANDUM
AND MOTIONS FOR VARIANCE OR DEPARTURE

Page 3 of 15

from each of the eight baggies were later tested by the Washington State Patrol Crime Laboratory and found to contain fentanyl.

Shawn Drummond was arrested in his vehicle. The vehicle was impounded and towed to a secure garage. A warrant was obtained to search the vehicle. A safe was found in the vehicle's trunk which contained a baggie of approximately 500 blue pills as well as $5,740 in U.S. Currency. What appear to be brass knuckles were also locked inside the safe. The pills were later tested by the Washington State Patrol Crime Laboratory and found to contain fentanyl.

By entering a guilty plea, Shawn Drummond admits that he possessed approximately 8,500 fentanyl-laced blue pills seized from his Dodge Challenger and the mailbox partially buried by his garage. Mr. Drummond further admits – and accepts full responsibility - that he intended to distribute the 8,500 fentanyl-laced pills to persons in the Wenatchee, Washington area.

3. **SHAWN DRUMMOND SINCE THE OFFENSE.**

That was then.

Shawn Drummond was booked into Chelan County Jail. He was kept in isolation while the jail was processing him. His withdrawal and detox from fentanyl hit him like an avalanche of pain and terror, leading to despair. His heart

was racing and pounding. He was convulsing and his legs and body were thrashing around involuntarily. He says it was a living hell and he felt he was being drawn into a nothingness - filled with pain and fear. Then he summoned the will and his remaining strength and got on his knees. Shawn says:

> Once incarcerated, I went through the worst detox I had ever experienced to almost fatal cardiac arrest. How many people suffered similar experiences due to my contribution to our community. How many ithers sought out criminal activities in desperation to supply their drug habits like I did? I cried out, "God what have I done?" I was at absolute rock bottom with no one else to turn too [sic], and in that moment of utter hopelessness I begged God to come into my life.[3]

Although the pain continued, Shawn felt some hope and peace. He was the antithesis of a spiritual person, but after his surrender to God he feels he is experiencing subtle ques that are leading him to atonement and onto a leadership role finding ways productively to reduce homelessness and the harm to individuals and the community caused by addiction.

---

[3] Draft PSIR at page 7.

DEFENDANT'S SENTENCING MEMORANDUM
AND MOTIONS FOR VARIANCE OR DEPARTURE

Page 5 of 15

### 4. APPLICABLE SENTENCING GUIDELINES PERTAINING TO MOTIONS FOR VARIANCE OR DEPARTURE.

Shawn Drummond is requesting a departure or variance pursuant to the policy statement in USSG §5K2.0 Post-Offense Rehabilitation.

(a) **Departure for Post-Offense Rehabilitation. U.S.S.G § 5K2.0.**

§5K2.0, Grounds for Departure (Policy Statement), outlines the kind of circumstances that can justify a departure from the sentencing guidelines. In general, a departure is justified where the of a case are unique and not adequately taken into consideration by the guidelines. The Supreme Court explained:

> Federal court's examination of whether factor can ever be appropriate basis for departure from applicable sentencing range under Sentencing Guidelines is limited to determining whether Sentencing Commission has proscribed, as categorical matter, consideration of factor; if answer to question is no--as it will be most of time-- sentencing court must determine whether factor, as occurring in particular circumstances, takes case outside heartland of applicable Guideline. *Koon v. United States*, 116 S.Ct. 2035, 518 U.S. 81 (1996).

In *United States v. Tzok-Sierra*, 387 F.3d 978 (9th Cir. 2004) the 9th Circuit reviewed a downward departure for post-offense rehabilitation. The court determined that post-offense rehabilitation can be the basis for a downward departure. Id. at 981 (citing *United States v. Thompson*, 31 F.3d 1071, 1077 (9th

DEFENDANT'S SENTENCING MEMORANDUM
AND MOTIONS FOR VARIANCE OR DEPARTURE

Page 6 of 15

Cir. 2002) (Berzon, J., concurring) (referencing § 5K2.0)). The court held that the departure "must be based on a determination that defendant had demonstrated an extraordinary level of rehabilitation." *Id*.

Shawn Drummond's personal transformation from someone who went from being a loathsome high volume drug dealer and a hopeless drug addict - to being a very substantial asset to the community is more than extraordinary.

On December 9, 2022 he was a fentanyl dealer with 8,500 toxic blue pills to spread around the community to becoming:

a. An Oxford House Housing Service Representative. He has organized a panel going to treatment centers and contacting people needing housing, then maintaining contact before and after housing at Oxford House is available.[4]

b. An instrumental member of Lighthouse Christian Ministries as a "bridge building connector for the recovery community," delivering people to the door for clean and sober programs, sober living, bible studies and church.[5]

c. A resource to inpatient treatment programs to provide housing to people who are finishing inpatient substance abuse treatment.[6]

---

[4] See 10-23-23 letter from Kelly Rimby, Oxford House Outreach Services, and Heather Monroe, 12-3-24 letter from Yvette Ramos., and 1-24-25 letter from Sarah Packer
[5] See 10-21-24 letters from Shawn Arington, Executive Director, and Brooke Cope Arington from Lighthouse Christian Ministries, and Letter from Paster J.R. Cano.
[6] See 11-14-24 letter from Carolyn Estrada, Drug Screen coordinator at the Center for Alcohol and drug treatment, and the 10-18-24 letter from Jennifer Storfa.

DEFENDANT'S SENTENCING MEMORANDUM
AND MOTIONS FOR VARIANCE OR DEPARTURE

Page 7 of 15

    d. A volunteer at food banks and soup kitchen including the Lighthouse Food Market who has been setting up AA and NA meetings there and helping people find housing.[7]

    e. Along with the above and other programs, assisting Catholic Charities with their housing and recovery programs.[8]

    f. And, along with Shawn's wife Kayla, being instrumental members of the Sage Hills Church spiritual and community outreach programs.[9]

The support letters in the footnotes and other support letters are being filed *ex-parte* and separately from this sentencing memo.

Mr. Drummond also has a leadership role with the Wenatchee City Council Homeless Response Task Force. He works there with the administrator, Josh Methina, who is also a former Chelan County Sheriff Deputy. Mr. Methina first knew Shawn when he was on the Columbia River Drug Task Force and Shawn was an addict. He says, "he believes the defendant [Shawn] is an asset to the community and he [Mr. Methina] will continue to work with him in this capacity." Then, being a former law enforcement officer, he observes, "He [Mr. Methina] believes the defendant is sincere, but he also realizes this sincerity may have come

---

[7] See letters from Cody Moore and Brice Kirkwood.
[8] See letter from Brice Kirkwood, Catholic Charities Community Outreach.
[9] See 11-19-24 letter from Mike Willson, Lead Pastor, 10-23-24 letter from Chris Maddox, and letter from Herman Bylenga.

DEFENDANT'S SENTENCING MEMORANDUM
AND MOTIONS FOR VARIANCE OR DEPARTURE

Page 8 of 15

from the fact that the defendant is facing a lengthy prison sentence. Mr. Methina believes the threat of punishment has helped the defendant [Shawn] change, but also believes the defendant's change is sincere."[10]

Shawn went from someone selfishly intent on destroying his life and the lives of people around him to being a good husband and father and a leader in the community - helping to find answers and develop ways to help unhoused people and current and former addicts.

So ---- is Shawn Drummond's post offense rehabilitation extraordinary? Absolutely! And he is taking his personal redemption to a new level. He is applying his intellect, leadership skills, and his unique, deep understanding of addiction, having been a hopeless addict, to helping individuals in need – and more broadly -- helping the community find solutions for substance abuse and addiction and corollary homelessness.

Right now, the sky is the limit for Shawn Drummond. He is presently making a difference with the addicted and unhoused in Chelan and Douglas counties. How far can his positive changes and influence go?

---

[10] See Draft PSIR ECF 76 ¶¶ 7 and 116.

DEFENDANT'S SENTENCING MEMORANDUM
AND MOTIONS FOR VARIANCE OR DEPARTURE
Page 9 of 15

**5.    18 U.S.C. §3553(a) FACTORS.**

**(a)    The sentencing guidelines are the starting point but are advisory only.**

The Supreme Court held that the mandatory imposition of a sentence within an applicable guideline range violates the Sixth Amendment to the United States Constitution. *United States v. Booker*, 543 U.S. 220, 226-227, 125 S.Ct. 738 (2005). To remedy this, the Court ruled that the guidelines were truly guidelines – advisory, and not binding on the sentencing court. 454 U.S. at 245.

The result of *Booker* and later cases is that a sentencing court must take "account of" the advisory guideline range but the court is not bound by the sentencing range indicated by the applicable guidelines. See*, Cunningham v. California*, 549 U.S. 270, 287, 127 S.Ct. 856 (2007); *Booker,* 543 U.S. at 261.

The sentencing guidelines are therefore just the "starting point in the initial benchmark" in determining a sentence. *Gall*, 128 S.Ct. at 596 And, the sentencing court "may not presume that the guideline range is reasonable." But must "make an individualized assessment based on the facts presented" to arrive at a sentence that is sufficient, but not greater than necessary in a given case. *Gall*, 128 S.Ct. at 597.

The district court judge has had the opportunity to become familiar with the case and the defendant, and compared to the Sentencing Commission, is "in a superior position to find the facts and judge their import under Section 3553(a) in each particular case." *Kimbrough,* 128 S.Ct. at 524 (Quoting *Gall*, 128 S.Ct. at 597).

**(b)    The Court can find reasons justifying a sentence outside the guideline range by considering the factors enumerated in 18 U.S.C. § 3553(a).**

The Court is well familiar that in imposing a sentence the Court must consider the following factors pursuant to 18 U.S.C. § 3553(a):

> <u>(a) Factors To Be Considered in Imposing a Sentence</u> - The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the

defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;(4) and (5) the United States Sentencing Guidelines and Policy Statements;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.18 U.S.C. § 3553(a).

Following is the application of the §3553(a) factors to the events that occurred, and to Shawn Drummond as a person.

(i) **The nature and circumstances of the offense and the history and characteristics of the defendant**.

Shawn Drummond agrees that the charge of distribution of fentanyl is very serious. His fentanyl was toxic and virulent to the people who used it and those around them, including the people and businesses they stole from them to get some more. Shawn has accepted full responsibility and he has accepted the consequences of his actions, not just to himself, but also to his family and the

community.[11]

He is now dedicated to making reparations for the terrible consequences of his acts. And, he is achieving success now, and he will continue to add to the understanding and the ways to help people emerge from addiction and homelessness.

### (ii) The need to protect the Public - Deterrence.

Mr. Drummond's background reveals a serious addiction to fentanyl and other dangerous drugs *in the past*. He is in recovery and the risk that Mr. Drummond will commit crimes is non-existent into the foreseeable future.

Shawn Drummond can be a case study, a role model, and an example to other people who are struggling with their destructive addictions. He also has the potential to become a leader in the unhoused and addiction recovery community.

His actions now positively indicate a respect for the law and there is no need to impose imprisonment to protect the public or to deter him from committing crimes in the future.

### (ii) The need to recognize the seriousness of the offense and to provide for just punishment.

---

[11] See Shawn Drummond's acceptance of responsibility. Draft PSIR at pages 6 to 8

Shawn Drummond recognizes the seriousness of the offenses he committed. He has unconditionally accepted responsibility and recognizes his accountability for the offenses.

Mr. Drummond respectfully requests the Court to carefully consider if anything would be gained by incarcerating him – as opposed to letting him continue with the good and important work he is doing.

> **(iv)  To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Shawn Drummond is currently employed full time and is actively involved in his family's day to day lives. And then, when his workday and family activities are done, he is off providing great service and leasdership to individuals and organizations around the community. If given the opportunity he will continue to be a positive influence on everyone and amazing example of how a person in the worst circumstances can redeem themselves and successfully reinvent their life.

In PART F of the PSIR Probation identifies factors that may warrant a sentence outside the USSG advisory guidelines:

> 158.  The defendant has a significant history of substance abuse and addiction. The Court should factor in the defendant's successful

treatment completion and his work in the community to help others with substance abuse disorder and homelessness.

**6.    RECOMMENDATION.**

We believe that when the Court looks into Shawn Drummond's life, his redemption, and achievements - the Court will recognize that a sentence of time served with at least 5 years of Supervised Release is the most appropriate resolution of this case for Mr. Drummond, his family, the homeless and addiction recovery community, and the community as a whole.

SIGNED this 28th day of January, 2024 at Spokane, WA.

s/ Robert M. Seines
ROBERT M. SEINES
Attorney for Shawn Drummond

**CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2025 I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification of such to: Michael Ellis, Assistant U.S. Attorney and to all parties in the case who are registered users of the CM/ECF system.

s/ Robert M. Seines

DEFENDANT'S SENTENCING MEMORANDUM
AND MOTIONS FOR VARIANCE OR DEPARTURE

Page 15 of 15